**In re Lee ESTAD and Jennifer Estad, Debtors.**

**No. 03–60047.**

United States Bankruptcy Court, D. Minnesota.

June 23, 2003.

**906**

Patrick O'Day, Jr., Fargo, ND, for Debtors.

Michael Nelson, Minneapolis, MN, for Objecting Creditors.

### ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter was heard on creditors Russell and Karen Hegges' objection to Debtors' claimed homestead exemption under 11 U.S.C. § 522(b)(2), and Minn.Stat. 510.02. Michael Nelson appeared on behalf of the objecting creditors, and Patrick O'Day, Jr., appeared on behalf of the Debtors. Based on the testimony heard and documentary evidence received, and on arguments and briefs of counsel, the Court now being fully advised in the matter, makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I.

On August 28, 2001, the Debtors entered into a purchase agreement with the City of East Grand Forks, Minnesota, to purchase the lot upon which their home is now situated. The debtors intended to build a home on the property, and to occupy it as their permanent home. In the meantime, they lived in a farmhouse owned by Jennifer's parents, who lived in a nearby town. The Debtors did not pay them rent.

On October 26, 2001, the Debtors closed on a construction loan in the amount of $144,932.00 with Community National Bank of Grand Forks, North Dakota. As a part of the transaction, they granted a mortgage upon the property to Community National Bank. On November 8, 2001, the Debtors reached an agreement with Pioneer Homes of Altona, Manitoba, Canada, to construct the house. During November of 2001, the concrete foundation was poured into the ground after the excavating crew was finished. The foundation was heated throughout the winter.

On January 10, 2002, the Debtors executed an agreement with Minnesota Housing Finance Agency, New Construction Incentive Program, through which they received a $10,000.00 loan. Under the program, they would be forgiven the $10,000.00 repayment if they lived in the home for 10 years and used it as their primary residence. On February 18, 2002, the Debtors made the final payment in the amount of $43,362.04 to Pioneer Homes from the loan with Community National Bank. On February 21, 2002, the house was shipped from Manitoba, Canada, to the property, and actually placed on the foundation. Utility bills, including water, heat and electricity, began during February, 2002. Homeowner's insurance began on February 27, 2002. Sometime within the next few days after February 21, 2002, the Debtors moved some furniture, appliances, clothes, and other personal belongings into the home.

Beginning in late February 2002, Lee Estad began to stay some overnights on the property while finishing the basement. The family continued to live in Jennifer's

parents' farm home, however, until June of 2002, when they finally moved into the new home, according to the schedules filed with their Bankruptcy petition and testimony given at their first meeting of creditors. The Debtors filed for relief under chapter 7 of the United States Bankruptcy Code on January 15, 2003, and claimed the home exempt under 11 U.S.C. § 522(b)(2)(A), and Minn.Stat. 510.02.

The Hegges obtained a money judgment against the Debtors, which was docketed in May, 2002, in the county where their home is located. The Hegges objected to the homestead exemption claimed by the Debtors in their schedules filed with the petition, arguing that at the time their judgment was docketed the property was not the Debtors' homestead. The Debtors argue that the relevant time for exemption qualification is at bankruptcy filing, and that the property clearly was their homestead on January 15, 2003. They claim that qualification of the property as their homestead at bankruptcy protects the property from the Hegges' judicial lien. Finally, the Debtors argue that the property was their homestead as early as February 2002, when Lee began refinishing the basement and staying at the house overnight occasionally.

For the reasons discussed below, the Court finds that the Debtors are entitled to the homestead exemption claimed in their schedules, but, that the scope of the exemption does not extend to the interest of the Hegges in the property represented by their judgment lien, and the lien is not avoidable under 11 U.S.C. § 522(f)(1)(A).

## II.

■ Bankruptcy exemptions are determined by application of law to facts as the law and facts exist at filing of the petition, not earlier or later. *In Re Peterson*, 897 F.2d 935, 937 (8th Cir.1990). At the time of the filing of their petition, the Debtors resided on the property they claimed as their homestead, and they are entitled to the exemption of the property from their bankruptcy estate. Although this proceeding was brought and argued as an objection to exemption, the disputed issue is whether the Debtors can avoid the Hegges' judgment lien. The proceeding will therefore be also be treated as a motion by the Debtors to avoid the Hegges' judgment lien.

11 U.S.C. § 522(f)(1)(A) provides, in part:

Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A)

a judicial lien ...

■ The lien cannot be avoided because it does not impair an exemption to which the Debtors would have been entitled. The scope of the homestead exemption under Minnesota law does not extend to an interest in property represented by a judgment lien that attached to the property before the exemption came into existence. *Rusch v. Lagerman et al.*, 194 Minn. 469, 261 N.W. 186, 187 (1935).

Plaintiff having gotten an equitable interest at his mother's death, January 26, 1926, upon which defendant Lagerman's judgment became a lien when docketed, April 1, 1926, plaintiff acquired no new rights which could defeat the lien when he moved on the premises in September, claiming a homestead therein. 29 C.J. 860; 13 R.C.L. 615; *Kelly v. Dill*, 23 Minn. 435 [(1877)]; *Liebetrau v. Goodsell*, 26 Minn. 417, 4 N.W. 813 [(1880)];

*Coolbough v. Roemer,* 30 Minn. 424, 15 N.W. 869 [(1883)].

11 U.S.C. § 522(f)(1) does not create exemptions out of whole cloth. It allows avoidance of certain liens that have attached to pre-existing exempt property.

 By the Debtors' own schedules and testimony at their 341 meeting, they did not reside on the property until June 2002, after the Hegges' judgment lien attached to the property. (Exhibit 4, Statement of Financial Affairs, 15); (Exhibit 3, Transcript of Proceedings Meeting of Creditors, February 14, 2003, pp. 22, 23). Even absent their own statements on the matter, it is otherwise clear from the record that they did not reside in their current home until after the judgment attached to the property. To reside in a home means to actually live and abide there. Spending occasional overnights while working on the basement of an intended future residence does not meet the threshold of living and abiding on the property, where the occasional stays are not interrupting a prior established residency on the property. *In re Smoinikar,* 200 B.R. 640, 644 (Bankr.D.Minn.1996).

### III.

Based on the forgoing reasons, the Court hereby **ORDERS** that:

1. the Hegges' objection to exemptions is overruled; and,

2. The Debtors' motion to avoid the Hegges' judgment lien is denied.